IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE ADAM RODRIQUIEZ, ) | |
| No. N91255, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15-cv-00897-SMY |
| ) | |
| LORAL KRANK, and ) | |
| WEXFORD HEALTH SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jose Adam Rodriquez is an inmate currently housed in Shawnee Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to his medical care.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must

cross "the line between possibility and plausibility." *Id*. at 557.  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

According to the complaint, on May 22, 2015, Plaintiff sought medical care for a prolonged and painful irritation of his left nostril, which was impairing his breathing.  Defendant Nurse Loral Krank examined Plaintiff's nose.  Plaintiff explained that he was experiencing pain that he rated as 8 on a 10-scale, and that his nostril had been bothering him for three months.  According to Krank's treatment notes, she observed minimal swelling; the irritation looked "pimple like," and there was no drainage (Doc. 1, p. 9).  Ibuprofen was offered but declined, and Plaintiff was directed to return if symptoms worsened (Doc. 1, p. 9).

From Plaintiff's perspective, Nurse Krank's examination was "distant," her medical knowledge lacking, and her decision not to have a doctor examine Plaintiff was negligent, reckless, malicious and sadistic.  Plaintiff asserts that Krank's treatment decisions were motivated by cost savings and whatever was easier for her.  Plaintiff vaguely suggests Krank's notes are false or incomplete.

Four days later, Plaintiff returned to the health care unit.  He reported to a different nurse that his pain was now 9 on a 10-scale, and that he had an ear ache; drainage was also noted, along with swelling (Doc. 1, p. 10).  Plaintiff was referred to a doctor, and ultimately diagnosed with a staph infection.[1]

---

[1]  Staph infections are caused by staphylococcus bacteria, types of germs commonly found on the skin or in the nose of even healthy individuals. Most of the time, these bacteria cause no problems or result in relatively minor skin infections.  But staph infections can turn deadly if the bacteria invade deeper into your body, entering your bloodstream, joints, bones, lungs or heart. A growing number of otherwise healthy people are developing life-threatening staph

Plaintiff attributes Nurse Krank's failure to diagnose and treat, or failure to refer him to a doctor, as the result of inadequate training by her employer, Wexford Health Services, Inc., the contract health services provider for the prison.  Plaintiff argues that Wexford is liable under its contract for being deliberately indifferent to the care afforded him, and liable for its own policies.

Nurse Krank and Wexford Health Services are both sued in their individual and official capacities.  Plaintiff seeks injunctive relief, as well as compensatory and punitive damages.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

> **Count 1: Nurse Krank was negligent and deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment; and**
>
> **Count 2: Wexford Health Services, Inc., was deliberately indifferent to Plaintiff's serious medical needs by failing to adequately train its employees, and by its policies, in violation of the Eighth Amendment and Wexford's contractual obligations.**

### Discussion

Relative to Counts 1 and 2, the Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.  U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).  Eighth Amendment

---

infections. Treatment usually involves antibiotics and drainage of the infected area. However, some staph infections no longer respond to common antibiotics.

http://www.mayoclinic.org/diseases-conditions/staph-infections/basics/definition/con-20031418 (last accessed Sept. 4, 2015).

protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

At this early juncture, Plaintiff's purported medical ailments appear sufficiently serious to implicate the Eighth Amendment, but that does not end the analysis.

*Count 1*

Nurse Loral Krank is sued in Count 1 for failing to recognize that Plaintiff's irritated nostril was a staph infection requiring a doctor's attention—or worse, Krank failed to render proper care because it was easier and/or more cost efficient to dismiss Plaintiff. The complaint characterizes Nurse Krank as distant, lacking in medical knowledge, negligent, reckless, malicious and sadistic.

As a general matter, a defendant may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). That the defendant had actual knowledge of impending harm can be inferred from circumstantial evidence. *Id*. at 842. Proving deliberate indifference, however, requires more than a showing of negligent or even grossly negligent behavior. *Id*. at 835. Rather, the defendant must have acted with the equivalent of criminal recklessness. *Id*. at 836–37. Erroneous treatment constituting a substantial departure

from accepted medical judgment, practice, or standards may constitute deliberate indifference. *See Gayton,* 593 F.3d at 623; *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999). Once prison officials know about a serious risk of harm, they have an obligation "to take reasonable measures to abate it," even if harm is not averted. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006); *see also Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

Whether Nurse Krank was negligent or deliberately indifferent (or neither) remains to be seen; however, as a matter of law, negligence claims cannot proceed under Section 1983. Those aspects of Count 1 must be dismissed. The fact that Plaintiff reported having a nostril infection for three months, along with a relatively high level of pain are suggestive of a condition that warranted further review. In addition, Nurse Krank's "distant" attitude may be evidence of deliberate indifference, so Count 1 shall proceed so the facts can be developed.

### *Count 2*

In Count 2, Plaintiff is attempting to hold Nurse Krank's employer and the prison contract health services provider, Wexford Health Services, Inc., liable for the purportedly inadequate care he was afforded. In addition to the allegation that Wexford did not adequately train Nurse Krank, it is asserted that Wexford's polices were implicated.

A corporate healthcare provider cannot be held liable for its employees' constitutional violations simply because it is the employer. *See Shields v. Illinois Dept. of Corrections*, 746 F.3d 782 (7th Cir. 2014); *Maniscalco v. Simon*, 712 F.3d 1139, 1145 (7th Cir. 2013) (no *respondeat superior* liability for private corporation). However, the corporation can be liable if the plaintiff's harm is caused by its unconstitutional policy or practice. *See Shields*, 746 F.3d at 796; *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004). The problem is that complaint only offers a conclusory assertion that Wexford's policies were to

blame for Plaintiff receiving inadequate care.  Although there is a suggestion that Nurse Krank may have been motivated to save costs, there is no suggestion that Wexford had a policy that care decisions should be based purely on a cost assessment.  Consequently, the complaint, as pleaded, fails to state a colorable Eighth Amendment claim against Wexford.

Plaintiff's attempt to yoke in Wexford via its contract with the Illinois Department of Services for health care services also fails.  Without deciding whether Plaintiff can even qualify as a third-party beneficiary to the contract, the breach of a contract is not, by itself, a constitutional violation.

Count 2 and Wexford Health Services, Inc., will be dismissed without prejudice.

### *Official Capacity & Available Remedies*

At this juncture Nurse Krank is the sole defendant to this action.  She is sued in both her individual and official capacities for monetary damages and injunctive relief in the form of an order that she cease doing what she allegedly did (*see* Doc. 1, p. 8).

Individual capacity suits seek to impose personal liability upon a government official for actions taken under color of state law—focusing on the constitutional torts of the individual official.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Monetary damages are an available remedy for individual capacity claims.  *See*, e.g., *Burd v. Sessler*, 702 F.3d 429, 432 (7th Cir. 2012).  Count 1 states a colorable individual capacity claim against Krank for monetary damages.

Official capacity suits, in contrast, are a way of suing the governmental entity of which the defendant official is an agent.  *Graham*, 473 U.S. at 166.  To the extent Plaintiff sues Nurse Krank in her official capacity, she is merely a proxy for the Illinois Department of Corrections, and a state agency (or state) is *not* a "person" that can be sued under Section 1983.  *See Will v.*

...

*Michigan Department of State Police,* 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment precludes an award of monetary damages in an official capacity suit, including punitive damages. *See* 42 U.S.C. § 1981a(b)(1); *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010). Therefore, the request for monetary damages from Krank in her official capacity will be dismissed with prejudice.

With respect to the request for injunctive relief, typically, the government official who is responsible for carrying out the requested relief would be named as a defendant in his or her official capacity. *See Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir. 2011). Even if Plaintiff is merely seeking to have Nurse Krank stop treating him with deliberate indifference, the claim appears to be moot, in that on May 26, 2015, Plaintiff was properly diagnosed and treated by a physician (*see* Doc. 1, pp. 5-6, 10-11). Out of an abundance of caution the request for injunctive relief will be dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 2 and WEXFORD HEALTH SERVICES, INC.**, are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 1** against **NURSE LORAL KRANK** in her individual capacity for monetary damages shall **PROCEED**; official capacity claims against **KRANK** for monetary damages are **DISMSSED with prejudice**; and official and individual capacity claims against **KRANK** for injunctive relief are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendant **NURSE LORAL KRANK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.

Service shall not be made on the unknown "John Doe" defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate

**Judge Philip M. Frazier** for further pre-trial proceedings.  Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: September 25, 2015

s/ STACI M. YANDLE
**United States District Judge**
